- 1 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case No. 1:2023-cv-24861**

JENNIFER BELL, JENNIFER BUFFAN, KAYLEE CASILLAS, JAMES DOUGLAS JR., CHARLETA HATCHETT, JADA HOGGARD, JERMAINE JACKSON, JAVONNEY and EMMANUEL KISSI, MICHAEL ROZENTAL, KELSEY SCALES REBECCA SCHUSTER, EMILY HOLMES TURNER and BLAKE TURNER, TAMMY and THOMAS WAGNER, and NANCY and DAVID WILLIAMSON, individually and on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

WANABANA LLC and WANABANA USA LLC,

    Defendants.
_____/

WANABANA LLC and WANABANA USA LLC,

    Third-Party Plaintiffs,

v.

S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A.,

    Third-Party Defendant,
_____/

**THIRD-PARTY COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendants and third-party plaintiffs WANABANA LLC and WANABANA USA LLC (together, "defendants"), by and through undersigned counsel, submit the following Third-Party Complaint.

## INTRODUCTION

This is a third-party complaint by defendants for indemnity and/or contribution from S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A. ("Negasmart"). Negasmart supplied the cinnamon used in the WanaBana Apple Cinnamon Fruit Puree (the "Product") that is the subject of plaintiffs' Complaint. Defendants complain and allege as follows based on personal knowledge as to defendants and their own acts and experiences and, as to all other matters, based on information and belief:

## THE PARTIES

1. Plaintiffs allege the following with respect to the various named Plaintiffs in this putative class action:

    a. Plaintiff Jennifer Bell and Plaintiffs Nancy Williamson and David Williamson are all citizens and residents of the State of North Carolina. (ECF No. 1 ¶ 4.)

    b. Plaintiff Jennifer Buffan is a citizen and resident of the State of Washington. (ECF No. 1 ¶ 5.)

    c. Plaintiff Kaylee Casillas is a citizen and resident of the State of Illinois. (ECF No. 1 ¶ 6.)

    d. Plaintiffs James Douglas, Jr., and Jada Hoggard are citizens and residents of the State of Georgia. (ECF No. 1 ¶ 7.)

    e. Plaintiffs Charleta Hatchett and Jermaine Jackson are citizens and residents of the State of Michigan. (ECF No. 1 ¶ 8.)

    f.    Plaintiffs Emily Holmes Turner and Blake Turner are citizens and residents of the State of Florida.  (ECF No. 1 ¶ 9.)

    g.    Plaintiffs Javonney Kissi and Emmanuel Kissi are citizens and residents of the State of Pennsylvania. (ECF No. 1 ¶ 10.)

    h.    Plaintiffs Michael Rozenthal and Rebecca Schuster are citizens and residents of the State of New York. (ECF No. 1 ¶ 11.)

    i.    Plaintiff Kelsey Scales is a citizen and resident of the State of Louisiana. (ECF No. 1 ¶ 12.)

    j.    Plaintiffs Tammy Wagner and Thomas Wagner are citizens and residents of the State of Oregon. (ECF No. 1 ¶ 13.)

2.    Defendant Wanabana LLC is a limited liability company organized under the laws of Florida with its principal place of business at 2000 Ponce de Leon Blvd., Suite 600, Coral Gables, FL 33134. The members of Wanabana LLC are Francisco J. Peña Cordovez and Santiago Peña Cordovez, both of whom are citizens of the Republic of Ecuador.

3.    Defendant Wanabana USA LLC is a limited liability company organized under the laws of Delaware.[1]  The members of Wanabana USA LLC are Wanabana LLC and Grupo Navis LLC.  Grupo Navis LLC is owned by two members: Angel Santiago Colon, who is a United States citizen and a resident of Puerto Rico, and Vástago L.L.C.: CPE-SERIES, a series of Vástago LLC

---

[1] Plaintiffs incorrectly allege that "Defendant WanaBana USA LLC is a Florida limited liability corporation with its principal office located at 1413 Ponce de Leon Avenue, Suite 301, in San Juan, Puerto Rico."  (ECF 1 ¶ 15.)  Although electronic articles of organization for another entity named Wanabana USA LLC were filed in Florida on October 25, 2023 (this LLC is referred to herein as "Florida-Organized Wanabana"), this filing was inadvertent.  The filing papers indicate there is one member of Florida-Organized Wanabana—Gualberto Rodriguez Feliciano—who, as noted above, is a citizen and resident of Puerto Rico.  Florida-Organized Wanabana has no assets or revenue.  It has never played any role in the manufacture, marketing, importation, distribution, or sale of the Product.

(which is the sole member of Vástago L.L.C.: CPE-SERIES).  Vástago LLC, in turn, has a single member: the Rodriguez Mowzoun Family Trust, of which Gualberto Rodriguez Feliciano and Neda Nowzoun are the sole beneficiaries, and Carlos Díaz Vivó is the sole trustee.  The trustee and beneficiaries are all citizens and residents of Puerto Rico, and the trust and Vástago LLC and its series are all organized under the laws of Puerto Rico.

4. Third-party defendant Negasmart is a *sociedad anónima*[2] registered and based in Quito, Ecuador.

## JURISDICTION AND VENUE

5. Subject-matter jurisdiction is present in this putative class action between plaintiffs and defendants under 28 U.S.C. § 1332 because plaintiffs allege there are no fewer than 100 class members; there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and at least one of the plaintiffs and one of the defendants are citizens of different states. (*See* ECF No. 1 ¶ 16.) The court also has supplemental jurisdiction over plaintiffs' claims under 28 U.S.C. § 1367. (*Id.*) The citizenship of a third-party defendant does not affect the existence of jurisdiction under § 1332. "Third-party claims by defendants for contribution against a third-party under Federal Rule of Civil Procedure 14(a) generally do not require an independent jurisdictional basis." *Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 568 (6th Cir. 2004). Thus, "the right to assert and maintain the third-party claim" in federal court would be "unaffected" even if "the third-party claimant and the third-party defendant are residents of the same state." *Southern Mill. Co. v. United States*, 270 F.2d 80, 84 (5th Cir. 1959).

---

[2] Ecuadorian entities formed as *sociedades anónimas* are generally treated as the equivalent of corporations in the United States.  *See, e.g.*, 26 C.F.R. § 301.7701-2 (identifying Ecuador's *sociedad anónima* as one of the entities treated like US corporations).

6. This Court has personal jurisdiction over Negasmart because, among other reasons, cinnamon "processed . . . by" it in Ecuador was imported into the United States through Florida and was "used or consumed within this state in the ordinary course of commerce, trade or use." Fla. Stat. § 48.193(1)(a)(6). Plaintiffs' claims arise from such conduct in and through Florida, which allowed them to use the Product in their home state.

7. The exercise of personal jurisdiction comports with due process because Negasmart "'purposefully direct[ed]' [its] activities at Florida." *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). Plaintiffs' Complaint arises out of Negasmart's "minimum contacts with" Florida and "exercise of jurisdiction comports with '"traditional notions of fair play and substantial justice."'" *Vermeulen v. Renault, U.S.A.*, 985 F.2d 1534, 1545 (11th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 301, 316 (1993). Negasmart placed its cinnamon in the international stream of commerce "aware that the final product is being marketed in" the United States, including Florida and every other state. *Asahi Metal Indus. Co. v. Superior Court of Ca., Solano Cty.*, 480 U.S. 102, 117 (1987). Indeed, the United States specifically was targeted for its products, as was evident from purchase orders sent to Negasmart indicating that intended recipients of the Product included U.S.-based retailers.

8. Venue is proper to the same extent and for the same reasons it is alleged to be proper in the Complaint. (ECF No. 1 ¶ 18.)

## SUMMARY OF INITIAL PLEADINGS

9. Plaintiffs commenced this action on December 22, 2023, by way of a Complaint filed in this Court. (ECF No. 1.)

10. The Complaint alleges that plaintiffs purchased the Product for personal purposes because the Product was advertised as being a premium, healthy fruit puree pouch. (ECF No. 1 ¶¶

4–13.) In addition to economic losses, the respective children of Bell, the Williamsons, Douglas, Hoggard, Hatchett, Jackson, and the Wagners suffered high levels of lead in their bodies according to lab tests. (*Id.*) The Complaint further alleges that the Product "contained elevated levels of lead." (*E.g.*, *id.* ¶ 49.) The Complaint alleges that defendants are liable for these injuries and economic losses associated with their purchase of the Product, asserting causes of action sounding in (i) negligent misrepresentation, (ii) unjust enrichment, (iii) breach of express warranty, (iv) breach of implied warranty, (v) violation of the Florida Deceptive and Unfair Trade Practices Act, (vi) violation of the Georgia Fair Business Practices Act, (vii) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, (viii) violation of the Michigan Consumer Protection Act, (ix) unfair and deceptive trade practices under New York law, (x) false advertising under New York law, (xi) violation of the North Carolina Unfair and Deceptive Trade Practices Act, (xii) violation of the Oregon Unlawful Trade Practice Act, (xiii) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and (xiv) violation of the Washington Consumer Protection Act. (ECF No. 1 ¶¶ 142–348.)

11. Defendants filed their respective answers to the Complaint on February 29, 2024. (ECF Nos. 18, 19.) Each answer generally denies plaintiffs' allegations, responds individually to each paragraph in the Complaint, and raises several additional defenses. (*See generally id.*) Defendants incorporate by reference all responses and allegations in their respective answers as though fully set forth herein.

12. One of the defenses alleged that "[p]laintiffs' injuries and damages, if any, were proximately caused in whole or in part by the negligence or fault of third parties, including . . . Negasmart." (ECF No. 18, at p. 35; ECF No. 19, at 35.)

- 7 -

## FACTUAL ALLEGATIONS

13. Plaintiffs' Complaint names Wanabana LLC and Wanabana USA LLC, neither of which manufactures or distributes the Product. Another company, Austrofood S.A.S. ("Austrofood"), manufactures the Product.

14. Austrofood is based in and organized under the laws of Ecuador.

15. Austrofood has invested in the research and processing of soursop and other fruits, keeping their organoleptic and nutritional characteristics intact.

16. To ensure the integrity, quality and safety of its products and the highest quality standards, Austrofood has meticulous and standardized production processes, both in the pre-production phase (acquisition of raw materials and qualification of suppliers) and the production, packaging, and distribution stages.

17. One of these quality standards entails the requirement that each of Austrofood's qualified suppliers present for each batch of raw material, a quality certificate through which the following is certified:

    a. Product name
    b. Batch number
    c. Date of manufacture
    d. Expiry date
    e. Life
    f. Organoleptic parameters (taste, smell, and color)
    g. Physical parameters (packaging material, moisture, texture, and percentage of impurities)
    h. Microbiological parameters
    i. Pollutant parameters (heavy metals, product results)

18. The information required by this certification includes a declaration of the existence or not of contaminating parameters, i.e., heavy metals, thus ensuring the full compliance of the raw material with Austrofood's rigorous regulations of quality, food safety and compliance with the INEN 2532.2010 standard.

19. In 2022, Alexander Ricardo Sánchez Obando was qualified by Austrofood as a supplier of ground cinnamon as a raw material, after complying with Austrofood's supplier qualification processes.

20. Austrofood purchased a total of 500 kg of ground cinnamon from Mr. Sánchez Obando, which was packaged by Negasmart, of which Mr. Sánchez Obando is President and majority shareholder.

21. Each of the lots of ground cinnamon acquired had a quality certificate granted by the supplier and signed by María Alejandra Clavijo, Head of Quality Control of Negasmart. This certificate certified, among other things, that the contaminant parameters relating to lead did not exceed specified levels.

22. The batches of ground cinnamon were then incorporated into the Product, and the final batches of the Product were delivered for distribution to different markets abroad, especially to the United States.

23. On October 27, 2023, Austrofood was notified by the U.S. Food & Drug Administration ("FDA") of an ongoing investigation conducted by the North Carolina Department of Health and Human Services ("NCDHHS") and the North Carolina Department of Agriculture and Consumer Services ("NCDA&CS") into lead poisoning reportedly suffered by four children in North Carolina.

24. Based on the information provided, the NCDHHS investigation identified the consumption of the Product as a possible source of lead exposure.

25. As part of its investigation, NCDHHS tested several batches of the Product and detected high concentrations of lead in the products. These results were reviewed and supported by the FDA, which shared this information with the companies involved in the production and

distribution chain, which prompted the companies' voluntary and immediate withdrawal of the Product from the U.S. market.

26. At the same time, the FDA initiated an investigation to determine whether or not the Product was indeed contaminated, and if so, what produced the contamination.

27. Austrofood undertook an analysis of the raw materials used for the manufacture of applesauce and cinnamon, including the cinnamon packaged by Negasmart and acquired from Alexander Ricardo Sánchez Obando, shareholder and president of Negasmart.

28. Austrofood then requested from Negasmart a counter-sample of cinnamon corresponding to the batches used for the manufacture of the Product marketed in the United States.

29. The first response received from Negasmart was that, despite its obligation to maintain counter-samples for subsequent analyses, it did not have a counter-sample of the required batches. Austrofood then decided to purchase new batches of the product from the same supplier to carry out a laboratory analysis of these new batches and others still in Austrofood's warehouses.

30. Laboratory analyses were carried out on the following batches:

- Existing batches of ground cinnamon in Austrofood's possession, purchased on October 13 and 25, 2023, signed with the numbers CNP.01.018 131023 and CNP.01.018 251023, respectively.

- New batches of ground cinnamon purchased from Negasmart on October 30, 2023, signed with the number CNP.01.018 301023.

- Countersamples of the finished applesauce and cinnamon products that were marketed to the United States, subject to the FDA alert, marked with lot numbers 11022:15, 11022:16, 04023:23 and 10023:08.

- Counter-samples of final apple products that are marketed in Ecuador, numbered 10023:07, 10023:04 and 10023:06, to verify if there was any type of cross-contamination.

31. On October 30, 2023, the products described in the preceding paragraph were delivered to the renowned laboratory Seidlaboratory Cía. Ltda. for testing.

32. Seidlaboratory Cía. Ltda. delivered the results of the tests on Saturday, November 4, 2023. These results indicated the presence of lead in the cinnamon supplied to Austrofood by Negasmart.

33. For example, the lead levels reported by Negasmart in lots of ground cinnamon purchased by Austrofood on October 13, 2023 (lot CNP.01.018 131023) and October 25, 2023 (lot CNP.01.018 251023) were <0.02 parts per million ("ppm," or milligrams per kilogram). The testing performed by Seidlaboratory Cía. Ltda., by contrast, reported findings of lead equivalent to approximately 3,958 ppm in lot CNP.01.018 131023, and equivalent to approximately 2,319 ppm in lot CNP.01.018 251023. For reference, 2.0 ppm is the maximum permissible limit for lead set by INEN 2532.2010.

34. Seidlaboratory Cía. Ltda. also performed testing on certain Austrofood products that did not contain cinnamon. None of those tests showed excessive lead levels in any of the products tested.

35. Since the testing performed by Seidlaboratory Cía. Ltda., the FDA has continued its own investigation and reached the same conclusion as to the source of lead.

36. According to an article in *Politico*, the FDA and "the Centers for Disease Control and Prevention have collaborated with state and local health authorities as well as Ecuadorian authorities to trace the origin of the cinnamon in the applesauce pouches, which is believed to be

the source of the lead contamination."³ The article further states that "U.S. and Ecuadorian authorities have traced the cinnamon to Negasmart, which supplies Austrofoods."⁴

37. The *Politico* article also reports that available evidence suggests that the lead was added to the cinnamon intentionally. Specifically, *Politico* reported a statement by the FDA's Deputy Commissioner for Human Foods, Jim Jones, that while the FDA's investigation is ongoing, "all of the signals [the FDA is] getting lead to an intentional act on the part of someone in the supply chain."⁵

## COUNT ONE – INDEMNITY

38. Defendants repeat and re-allege the allegations contained in paragraphs 1-37 above, as if set forth fully herein.

39. Negasmart owed a duty to plaintiffs as foreseeable consumers of its cinnamon.

40. Defendants are without fault for the injuries alleged by plaintiffs.

41. Defendants have become subject to alleged liability (which they deny) for the unauthorized and wrongful conduct of Negasmart. The basis for this lawsuit and the alleged liability of defendants is the presence of lead that Negasmart failed to disclose and misrepresented did not exist.

42. Defendants have been damaged as a result by having to defend this and other lawsuits. Defendants continue to incur damages as this and other actions remain pending, and their damages will increase further in the event of any adverse judgment against them.

---

³ Marcia Brown & Meredith Lee Hill, *Applesauce pouches may have been contaminated on purpose, FDA foods chief says*, Politico, Dec. 14, 2023, https://www.politico.com/news/2023/12/14/applesauce-pouches-may-have-been-contaminated-on-purpose-fda-foods-chief-says-00131797.
⁴ *Id.*
⁵ *Id.*

43. As a result, Negasmart owes an equitable duty to indemnify defendants against all liability and damages.

## COUNT TWO – CONTRIBUTION

44. Defendants repeat and re-allege the allegations contained in paragraphs 1-37 above, as if set forth fully herein.

45. Negasmart owed a duty to plaintiffs as foreseeable consumers of its cinnamon.

46. Negasmart is at fault for the damages alleged in plaintiffs' Complaint. It is the presence of lead that Negasmart failed to disclose and misrepresented did not exist that is the basis for this lawsuit and the alleged liability of defendant.

47. Defendants have been damaged as a result by having to defend this and other lawsuits. Defendants continue to incur damages as this and other actions remain pending.

48. To the extent defendants are found liable on any claims asserted by plaintiffs, such liability will have been directly and proximately caused by Negasmart, and defendants are entitled to contribution for such liability.

## PRAYER FOR RELIEF

**WHEREFORE**, defendants pray for a judgment awarding full indemnification and contribution from third-party defendant Negasmart for any and all damages, fees, costs, and any other relief that may be awarded to plaintiffs, and such further relief as may be just and proper.

## JURY DEMAND

Defendants request a trial by jury on all issues so triable.

DATED:  March 13, 2024

Respectfully submitted,

<u>/s/ Andrew R. Kruppa</u>
Andrew R. Kruppa (FL Bar 63958)
andrew.kruppa@squirepb.com
Amanda E. Preston (FL Bar 123652)
amanda.preston@squirepb.com
Bradley W. Crocker (FL Bar 118616)
bradley.crocker@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
200 South Biscayne Blvd., Ste. 3400
Miami, Florida  33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001

*Counsel for Wanabana LLC and Wanabana USA LLC*

- 14 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of March 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document has been served upon counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                      */s/ Andrew R. Kruppa*
                                      Andrew R. Kruppa